## VENEROSO v. SPEAR & CO.

(Supreme Court, Appellate Division, First Department.　February 13, 1914.)

MASTER AND SERVANT (§ 332*)—ASSAULT BY SERVANT—QUESTION FOR JURY—
SCOPE OF EMPLOYMENT.

In an action for an assault by defendant's collector and helper upon plaintiff in possession of a house containing furniture purchased of defendant by former resident, which she would not allow the collector to take away, *held* that the question whether the collector and helper were defendant's servants, acting within the scope of their authority in attempting to remove the furniture and in making the assault, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1274–ˑ 1277;　Dec. Dig. § 332.*]

Clarke and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Armida M. Veneroso against Spear & Co.　From a judgment entered upon a verdict, and from an order denying a motion for a new trial, defendant appeals.　Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Julius C. Feder, of New York City, for appellant.
Rosario Maggio, of New York City, for respondent.

INGRAHAM, P. J.　The defendant sent a two-horse delivery wagon, with a driver, helper, and collector, to a house in Brooklyn, to collect a bill owing to it for furniture, purchased by a former resident of the house.　They arrived at the house, and the helper and collector went in and demanded the payment of the amount due on the bill or the return of the furniture from the plaintiff, who was then in possession of the house.　The collector, after plaintiff stated that the person who had purchased the furniture had moved away and no longer lived there, claimed that a buffet, in the room wherein they then were, was the piece of furniture purchased from the defendant.　According to plaintiff's story, they attempted to take it, and, when plaintiff resisted, assaulted her.　For that assault this action is brought.

There was evidence introduced by the plaintiff to show that the wagon, in which the men came to the house, belonged to, and that the men were employed by, the defendant.　On the part of the defendant, it was shown that the collector was dead; the helper was called, and denied the assault; the manager was called, and testified that the collector, helper, and driver were in the defendant's employ; that he gave instructions to the collector to request the customers to make payment of balance due on account; that if no payment is made, he is to request the return of the goods from the customer, and if the customer refuses to return the goods, he has orders to go out, leave the premises, and report that to the office; and that these instructions are given to all the men in the defendant's employ.　The court submitted to the jury whether these men were servants of the defendant, whether they were acting within the scope of their employment when

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they attempted to take this piece of furniture from the house, and whether, while so acting, they inflicted upon plaintiff the injuries of which she complains. The jury found a verdict for the plaintiff, and the only question is whether there is evidence sufficient to warrant submitting the questions to the jury. The court, in its instructions to the jury, charged every request by the defendant, and there is no exception to the charge.

I think this was clearly a question for the jury. The defendant sent to this house a delivery wagon and three men. They had instructions, if the money was not paid on demand, to demand the return of the articles sold, and if that demand was not complied with, to remove the furniture and return it to the defendant's place of business. Certainly, in going to the house and in making demand for the return of the furniture, the bill not having been paid, the men were acting within the scope of their employment, for that was just what they were directed to do. But they were further instructed, if the return of the furniture was refused, not to take it by force, but to return to the office and report, but that instruction left it to the employés to determine when the demand was refused, and when to take the furniture. The only witnesses by whom the defendant attempted to prove any limitation on the authority given to the employés of the defendant were the manager of defendant and the helper, who was present at the time of the occurrence. The defendant had sent a wagon and three men to the house, which certainly would not have been the usual course, if a mere demand for the payment of the bill was to be made. Under certain conditions the collector and helper were authorized to remove the furniture and return it to the defendant's place of business. As long as they had authority to go and take the article sold in case the bill was not paid, it cannot be said that the use of force to accomplish their purpose was not within the scope of their employment; but what the evidence of what instructions were given, and what force was to be employed, came from witnesses in the employ of the defendant, and it was not for the court to say as matter of law that the collector and helper were acting without the scope of their employment.

In Weinstein v. Singer Mfg. Co., 121 App. Div. 708, 106 N. Y. Supp. 517, the facts were quite different. There the defendant proved a written contract with the two men who it was claimed committed the assault, and it was held that, under the express contract which was in writing, defendant's men had no authority from the company to take the machine away from the plaintiff's husband, and had no authority to use force for that purpose, and there was nothing in the relation of either of these men to the defendant, nor the authority conferred upon them by their contracts under which they were working for the defendants, which authorized them to take any act in recovering possession of this machine except as directed by the defendant. In this case the defendant was expressly authorized to remove the furniture, and evidently from the fact that they went in a delivery wagon, to the house, the collector, together with helper and driver, went there expecting that it might be necessary to remove the articles sold. Assuming that the jury were bound to find upon this testimony that the col-

lector at the same time had been instructed not to make an assault, if he could not get the furniture without it, that does not seem to me to be a limitation upon his authority to remove the furniture that would relieve the defendant from liability for the use of force, although using of force was a violation of the instructions to its employés. The defendant was authorized to go to the house and collect the bill or take the furniture, and for the acts which its employés did in accomplishing that purpose which the defendant had in view, it seems to me, the defendants were responsible. If I am wrong, however, it seems to me it was at least for the jury to say from all the testimony whether the acts of this collector, while he was in the plaintiff's house carrying on the business of his employer, were within the scope of his authority, or whether the testimony of the defendant as to the scope of his authority was such as to relieve the defendant from liability for such acts. As the questions were submitted to the jury in an eminently fair charge, to which no exception was taken, I see no reason to interfere with their verdict.

I think, therefore, the judgment should be affirmed with costs.

LAUGHLIN and HOTCHKISS, JJ., concur.

SCOTT, J. (dissenting). The defendant, a corporation, is engaged in the business of selling furniture; a large part of its business being conducted on what is known as the installment plan. On July 27, 1911, one of defendant's collectors, accompanied by a driver and helper, called at plaintiff's house to collect an installment due upon a sideboard which had been purchased by plaintiff's brother-in-law. As to what took place the witnesses differ. The plaintiff's story, supported by her mother and sister, is that defendant's collector, who has since died, insisted upon examining a sideboard standing in her dining room to see whether or not it bore defendant's mark; that plaintiff refused to allow him to do so, whereupon he assaulted her. The defendant's employés who were present contradicted this, and assert that no assault whatever took place. On this issue the jury found in plaintiff's favor, and we see no reason for disturbing their finding. Nor are the damages awarded excessive if plaintiff was injured as she says that she was.

The sole question in the case is whether or not defendant is responsible for the assault committed by its servants, and this depends upon whether or not the servants were acting within the scope of their duty. The evidence of the defendant's manager in charge of collections, and that of the driver's helper, was that defendant's collectors were always instructed merely to ask for payment, and, if payment was not forthcoming, to request a return of the goods, but that if the customer refused to give up the goods, the collector was instructed to leave the premises at once, and under no circumstances to use force. They were also instructed that they must not take away goods without the consent of the customer. It was testified that if, as in the present case, the goods were found in the possession of a third person, the collector was instructed to make no effort to take away the goods, but to report

the fact to the office. This evidence could not, of course, be contradicted by plaintiff, who was in no position to know what instructions defendant gave its servants, but that is no reason for rejecting it, nor is there any other apparent reason, unless a suspicion that it may not be true would justify disregarding it; and, even for such a suspicion, there is no ground disclosed in the case. Assuming, then, that the evidence as to the instructions given to the collector is worthy of belief, it is clear that in assaulting plaintiff the collector acted without the scope of his duty and authority, and the defendant is not liable for the assault. This is the rule that has been invariably applied in like cases in this state. Meehan v. Morewood, 52 Hun, 566, 5 N. Y. Supp. 710; affirmed on op. below, 126 N. Y. 667, 27 N. E. 854; Feneran v. Singer Mfg. Co., 20 App. Div. 574, 47 N. Y. Supp. 284; McGrath v. Michaels, 80 App. Div. 458, 81 N. Y. Supp. 109; Weinstein v. Singer Mfg. Co., 121 App. Div. 708, 106 N. Y. Supp. 517; Murphy v. Buckley Newhall Co., 151 App. Div. 520, 136 N. Y. Supp. 309.

The respondent cites to us a number of cases as establishing a different rule. Levi v. Brooks, 121 Mass. 501; McClung v. Dearborne, 134 Pa. 396, 19 Atl. 698, 8 L. R. A. 204, 19 Am. St. Rep. 708; Peddie v. Gally, 109 App. Div. 178, 95 N. Y. Supp. 652; O'Connell v. Samuel, 81 Hun, 357, 30 N. Y. Supp. 889. No one of these cases, however, is applicable to the present, for in each one of them the determining fact was that the employé for whose tort the employer was held to be liable had been instructed to take away the goods, and it was in the effort to carry out this instruction that the assault was committed.

Upon the evidence as it stood at the close of the case the court should have dismissed the complaint. The judgment and order should be reversed, and new trial granted, with costs to appellant to abide the event.

CLARKE, J., concurs.